IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 3:22-cr-148–HEH |
| ) | |
| MELVIN LEON MYRICK, ) | |
| a.k.a. "MEL SKEE," ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION
### (Denying Defendant's Motions to Suppress)

THIS MATTER is before the Court on Melvin Myrick's ("Defendant") Motion to Suppress Cell phones and Motion to Suppress Identification (ECF Nos. 25 and 27, respectively; the "Motions," collectively), filed on December 9, 2022. The Grand Jury returned a one-count Indictment, charging Defendant with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (ECF No. 1.) Defendant seeks to suppress two cell phones and Officer Karissa Jackson's testimony which identifies him as the fleeing suspect and driver of a vehicle that contained drugs, drug paraphernalia, and firearms. He claims the evidence was obtained in violation of the Fourth and Fifth Amendments. Defendant and the United States filed memoranda supporting their respective positions. The Court heard evidence and oral argument on January 24, 2023. For the following reasons, the Court will deny Defendant's Motions.

## I. BACKGROUND

Based on the testimony and evidence submitted at the hearing, the relevant facts are as follows. At roughly 2:00 a.m. on April 20, 2022, Officer Karissa Jackson ("Officer Jackson") of the Petersburg Police Department observed a Silver Nissan turn right onto Boulevard Avenue while the traffic light was red, despite two clearly posted "NO TURN ON RED" traffic signs. (ECF No. 33 at 2; Suppression Hr'g, Ex. 1.) Having observed this traffic violation, Officer Jackson sought to pull over the vehicle, so she activated her patrol vehicle's emergency lights and siren. (*Id.*) In response, the driver accelerated, speeding over 85 miles per hour and switching lanes erratically.[1] (*Id.*) Officer Jackson called for backup and began to lose sight of the Nissan, so she turned off the emergency lights and siren. (*Id.* at 3.) She then encountered the Nissan wrecked into a tree on the right side of the road, with airbags deployed. She illuminated the emergency lights on her vehicle and parked behind the Nissan. (*See id.*; Suppression Hr'g, Ex. 4.)

The driver of the Nissan, who was a male, stepped out of the vehicle and began to flee from the scene by running toward a wooded area. (ECF No. 33 at 3.) The man then changed course and began running along the driver's side of the Nissan, toward the Nissan's trunk. (*Id.*) At the suppression hearing, Officer Jackson testified that the man suddenly paused for roughly five seconds while standing near the trunk of the Nissan. While he was standing by the trunk and facing her, she was seated in her vehicle and

---

[1] This was an estimate based on Officer Jackson comparing the speed of her vehicle, which was recorded as traveling at 85 miles per hour, with that of the Nissan, which was traveling at a faster rate than Officer Jackson's vehicle. (*See* ECF No. 33 at 2.)

2

looking directly at him through her windshield. (*See id.*) Officer Jackson and the driver made eye contact. (*Id.*) From there, the man ran from the trunk of the Nissan to the front passenger door, which he attempted to open. (*Id.*) Officer Jackson suspected the driver attempted to open the passenger side door because he had realized he left something inside the vehicle and wished to retrieve it. (*Id.*) He was ultimately unable to open the passenger side door. (*Id.*) Then, the man fled on foot into the wooded area and was not found that night.[2] (*Id.*)

Officer Jackson was concerned for her safety and unsure whether there was anyone else inside the vehicle or if the driver of the Nissan was nearby and armed. When backup arrived moments later, Officer Jackson got out of her vehicle and confirmed that no one else was inside of the Nissan. (*Id.*) She searched the vehicle and found a bookbag on the floor of the front passenger seat which contained suspected methamphetamine, suspected cocaine, suspected marijuana, and a black digital scale.[3] (*Id.*) On the center console was a loaded semi-automatic Glock pistol, and on the driver side floor she observed another loaded semi-automatic Glock pistol and a white iPhone. (*Id.*) She also identified a black iPhone recovered from the driver side door. (*Id.*)

Officer Jackson discovered some documents located inside the car. One document was a DMV license application which bore the name, "Melvin Myrick." (Suppression

---

[2] The man, later identified as the Defendant in this case, was subsequently arrested in August of 2022, in connection with another drug trafficking investigation in Prince George County.

[3] All drugs were later submitted to the Virginia Department of Forensic Science and determined to be the drugs they were suspected to be.

Hr'g, Ex 5.) Another document was a Virginia Electronic Benefits Transfer card issued to an individual named Ms. Dimorea Daniels.[4] (ECF No. 28 at 3.) The last document was a car repair estimate generated for an individual named Mr. John Myrick. (*Id.*)

Officer Jackson approached an investigating officer who was also at the scene of the car crash. (ECF No. 34 at 5.) She showed the other officer the DMV document and asked him to retrieve a DMV photograph of Defendant on his patrol car computer screen. (*Id.*) After seeing the photograph, Officer Jackson confirmed that the man depicted in the photograph was the same man who had been driving the Nissan. (*Id.*)

On April 25, 2022, Officer Jackson sought and obtained a search warrant for the black and white iPhones that were located inside the Nissan. (ECF No. 33 at 4.) At the time Officer Jackson submitted the application for the search warrant for the cell phones, she did not know to whom the cell phones belonged. The search warrant and affidavit were filed with the Colonial Heights Circuit Court on April 26, 2022. (*Id.*) On June 2, 2022, a Petersburg detective obtained a search warrant for historical location information associated with the accounts pertaining to the cell phones. (*Id.*) The search warrant was returned executed and filed with Petersburg Circuit Court on June 7, 2022. (*Id.*)

Defendant claims he was not the driver of the Nissan and that evidence obtained from the search of his cell phones and Officer Jackson's purported identification of him should be suppressed.[5] Specifically, Defendant argues he was not properly put on notice

---

[4] It was later discovered that the car was leased to Ms. Daniels. (Suppression Hr'g, Ex. 13.)

[5] Defendant originally argued in his Motion that the search of the vehicle was unlawful and that "all evidence regarding the traffic stop" should be suppressed. (ECF No. 26 at 2.) However, at

4

as to the search of his cell phones, which he contends was in violation of the Fourth Amendment. (ECF No. 26 at 2–9.) He also claims Officer Jackson's purported identification of him violated the Fifth Amendment because it was impermissibly suggestive and unreliable under the totality of the circumstances. (ECF No. 28 at 1–2.) On October 4, 2022, Defendant was indicted by a federal grand jury in a one-count Indictment charging him with possession with intent to distribute 50 grams or more of methamphetamine. (*Id.*)

## II. ANALYSIS

### A. Suppression of the Cell phones

Under the Fourth Amendment, officers may not conduct "unreasonable searches and seizures," U.S. Const. amend. IV, but "not every police-citizen encounter" is a seizure. *United States v. Cloud*, 994 F.3d 233, 241 (4th Cir. 2021). A seizure occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). When "physical force is absent, a seizure requires both a 'show of authority' from law enforcement officers and 'submission to the assertion of authority' by the defendant." *United States v. Stover*, 808 F.3d 991, 995 (4th Cir. 2015).

---

the suppression hearing, Defendant conceded that he did not have standing to make this argument because he was allegedly not in the vehicle or at the scene of the crash on April 20, 2022. He also conceded that he had no reasonable expectation of privacy in a rental vehicle which neither belonged to him nor was leased to him. Defendant further conceded that the affidavit and search warrant for the cell phones were facially valid and supported by probable cause. Defendant's argument, as to the search of the cell phones, hinges on the alleged insufficient notice.

The defendant must establish that he had a reasonable expectation of privacy in cell phones at the time of the search. *See Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980). Where a defendant abandons property, he may not later contend that the Fourth Amendment protects him. *See United States v. Small*, 944 F.3d 490, 501 (4th Cir. 2019). The Court must "evaluate whether the defendant intended to abandon an item using only objective information available to officers at the time they performed the warrantless search." *Id.* "There has to be some voluntary aspect to the circumstances that lead to the phone being what could be called abandoned." *Id.* at 502.

Probable cause requires only "a fair probability, and not prima facie showing, that contraband or evidence of a crime will be found in a particular place." *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019). It is not a "high bar." *Id.* The affidavit "need only supply enough facts for a neutral magistrate, who may make reasonable inferences to fill in any logical gaps, to find the required nexus." *United States v. Orozco*, 41 F.4th 403, 410 (4th Cir. 2022).

Even assuming a warrant lacks probable cause or particularity, suppression is not the preferred remedy. The Supreme Court has long held that because of the significant costs of the exclusionary rule, it is "applicable only . . . where its deterrence benefits outweigh its substantial costs." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). *United States v. Leon*, 468 U.S. 897 (1984) identified four circumstances in which an officer's reliance on a warrant would not be objectively reasonable:

> (1) when the issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," (2) when "the issuing magistrate wholly abandoned his judicial role," (3) when "an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) when "a warrant [is] so facially deficient—*i.e.*, in failing to particularize the place to be searched or things to be seized—that the executing officers cannot reasonably presume it to be valid."

(quoting *Leon*, 468 U.S. at 923).

Federal Rule of Criminal Procedure 41(f)(1)(C) requires the executing officer to give a copy of the warrant and a receipt for any property taken to the person from whom, or from whose premises, it was taken.

As articulated in note 4, *supra*, while Defendant originally challenged the constitutionality of the search of the vehicle,[6] he later conceded at the suppression hearing that he does not have standing to assert that argument because he claims he was not the driver of the vehicle. As such, the cornerstone of Defendant's argument regarding the suppression of the cell phones is that local law enforcement provided no notice and made no effort to provide notice to Defendant of the search warrants for the cell phones,

---

[6] Because Defendant raised the argument in his Motions, the Court will briefly address the issue. In this case, the Fourth Amendment was not implicated because the driver of the Nissan was not seized when he failed to yield to Officer Jackson's attempted traffic stop and fled on foot. "A defendant who flees the police in response to an assertion of authority has not been seized, and thus his Fourth Amendment rights are not implicated." *Brown*, 401 F.3d at 594. Even if the Court were to conclude a seizure occurred, the traffic stop was justified because there was probable cause that the driver of the Nissan was violating a traffic law: he turned right on red where there was a sign posted which prohibited such conduct. Moreover, the driver of the Nissan did not have a reasonable expectation of privacy for the items inside the car because he abandoned them. *See Small*, 944 F.3d at 503. But even assuming, *arguendo*, the driver had a reasonable expectation of privacy for the cell phones recovered from the abandoned car, Officer Jackson sought and obtained a valid search warrant from a Virginia magistrate and relied upon the magistrate's finding of probable cause in good faith, so no constitutional violation occurred.

7

in violation of Virginia Code § 19.2-54, Federal Rule of Criminal Procedure 41(f)(1)(C), and the Fourth Amendment. (ECF No. 2–9.)

Specifically, Defendant claims that law enforcement knew the phone numbers of the cell phones as late as the filing of the search warrant on April 25, 2022, but that to this date, "the **only** identifiers on the search warrant for the two cell phones are 'Black iPhone [item #11]' and 'White iPhone [item #12]' and the Bates stamp added by the United States Attorney's Office: 'Myrick 000070.'" (*Id.* at 5 (emphasis in original).) Defendant argues that there is no way the information on the face of the warrant could allow for meaningful "public inspection" of the files by an aggrieved person or their counsel. (*Id.*)

Because the search warrant could not be found until "the federal case was well under way," Defendant claims that local law enforcement engages in a pattern and practice that "routinely denie[s]" access to search warrants and inhibits constitutional challenges. (*Id.* at 4.) Defendant asserts this shows that "local law enforcement has perfected a pattern and practice of complying with the letter of the law while defeating the entire purpose of the law, and thereby subverting the Fourth Amendment protections of aggrieved persons." (*Id.*)

Federal law, not state law, governs the admissibility of evidence in federal prosecutions. *See United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994). "The importance of applying only federal standards is especially pronounced in cases involving illegal search and seizure claims because the exclusionary rule for such claims was created to deter violations of federal constitutional law, not violations of state law."

8

*Id.* Defendant seeks to litigate concerns about state practices of pre-indictment search warrant filings to support suppression in this case and, in doing so, misconstrues the law.

Defendant's grievances with state laws and procedures do not amount to a Fourth Amendment violation. Indeed, the best place for such arguments is the Virginia General Assembly, not the federal judiciary. Defendant's vague reference to Federal Rule of Criminal Procedure 41(f)(1)(C) does not support suppression of the cell phones in this case. The United States Court of Appeals for the Fourth Circuit has explained that Rule 41 does not apply to a search warrant which was obtained and executed by State law enforcement officers. *See Clyburn*, 24 F.3d at 616 ("[B]y its own terms, Rule 41 applies only to federal search warrants involving a federal law enforcement officer.").

Here, no federal law enforcement officers were involved. However, even if federal law enforcement officers had been involved in this case, Defendant concedes that the search warrant for the cell phones was valid. While it is true that Officer Jackson eventually suspected that Defendant was the driver of the vehicle, the actual owner of the cell phones was unknown at the time Officer Jackson completed the affidavit and search warrant application.

Furthermore, the Fourth Circuit has held that where Rule 41 is violated, suppression is required only where the defendant is prejudiced by the violation or "there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Simons*, 206 F.3d 392, 403 (4th Cir. 2000). Defendant cannot show that he was prejudiced, nor can he show evidence that any officer intentionally or deliberately disregarded any rules related to the search warrant or the handling of it. Ultimately,

9

counsel for Defendant had sufficient access to the affidavits to challenge their validity. Thus, Defendant's Motion to Suppress Cell Phones will be denied.

### B. Suppression of the Identification

The Fifth Amendment's due process clause protects criminal defendants from impermissibly suggestive eyewitness identification. *See Neil v. Biggers*, 409 U.S. 188 (1972). "In determining whether identification testimony is admissible, a two-step analysis is required." *United States v. Johnson*, 114 F.3d 435, 442 (4th Cir. 1997). First, the court looks to whether the initial identification was impermissibly suggestive. *See United States v. Wilkerson*, 84 F.3d 692, 695 (4th Cir. 1996) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)).

Second, even if the procedure was suggestive, the in-court identification is valid provided the identification is reliable. *See id.* Courts test an identification's reliability by considering the totality of the circumstances. *See Holdren v. Legursky*, 16 F.3d 57 (4th Cir. 1994), *cert. denied*, 513 U.S. 831 (1994). Factors used to assess reliability include: (1) the opportunity to view; (2) the degree of attention; (3) the accuracy of the description; (4) the witness' level of certainty; and (5) the time between the crime and the confrontation. *See Manson*, 432 U.S. at 114.

Defendant contends that the presentation of a single photograph, rather than a photographic array, including the Defendant, was impermissibly suggestive and unnecessary. (ECF No. 28 at 4.) Defendant also argues that Officer Jackson's failure to include photos of the other names that were listed in documents within the car was unduly suggestive. (*Id.*) The Government, on the other hand, argues that the

10

identification process was not suggestive because there was no coercive pressure placed upon Officer Jackson to make an identification. (ECF No. 34 at 5.) Furthermore, Officer Jackson was pursuing a suspect at a crime scene, which required an immediate response.

The Supreme Court has questioned the use of a single photograph for pretrial identification but has nevertheless found identification reliable based upon the use of a single photograph in certain circumstances. *See Manson*, 432 U.S. at 117 (finding identification reliable based upon the use of a single photograph where there was "little pressure on the witness to acquiesce in the suggestion that such a display entails."); *Simmons v. United States*, 390 U.S. 377, 385 (1968) (finding identification reliable based upon six photos of the two perpetrators because the perpetrators were still unidentified and possibly engaging in more criminal activity, the witnesses saw the perpetrators midday, and the witnesses "were shown the photographs only a day later, while there memories were still fresh."). However, while the use of a single photograph has been questioned, the Supreme Court has long recognized that there may be an overriding necessity that justifies displaying a single photograph in exigent circumstances such as the case at hand. *See id.*

Based on the reasoning and rationale of *Manson* and *Simmons*, the Court concludes that the single photograph display was not unduly suggestive. Like the circumstances in *Manson*, here, Officer Jackson viewed a single photograph in a context where there was no coercive pressure placed upon her. 432 U.S. at 117. Rather, Officer Jackson had sought the help of a fellow officer to retrieve the DMV photograph and

11

when the image was displayed, she immediately—and without being prompted to do so—stated, "that's him."

Furthermore, as in *Simmons*, Defendant in this case fled on foot. 390 U.S. at 385. His whereabouts were unknown, he was unidentified, and he could have been engaging in more criminal activity. *See id.* While Officer Jackson did not observe Defendant midday, she did see him while her vehicle headlights were pointed directly at him, from roughly thirty feet away. She had a clear vantage point to see him through her windshield and they made eye contact. Further, Officer Jackson's memory was fresher than the circumstances in *Simmons*, where witnesses observed photographs a day later. *See id.* Here, Officer Jackson saw the DMV photograph minutes after seeing Defendant's face.

In addition, there was an overriding necessity that justified the display of the single photograph in this case. *See Manson*, 432 U.S. at 114. Officer Jackson had reason to believe a serious felony had been committed. Specifically, she observed the suspect travel at speeds of over 85 miles per hour to avoid being pulled over. Once the vehicle had crashed, she witnessed the suspect flee the scene and observed that drugs and numerous firearms were located inside the vehicle. Because the suspect had fled on foot, Officer Jackson was unsure as to the suspect's whereabouts (*i.e.*, whether he was lurking in the surrounding wooded area) and whether he was armed and dangerous (*i.e.*, whether he had a dangerous criminal history). By retrieving the DMV photograph and identifying the suspect, she was able to better assess her safety and that of the community. Even

assuming, *arguendo*, the procedure used was suggestive because only one photograph was used, it was necessary, in light of the exigent circumstances. *See id.*

Moreover, even if the Court were to find the showing of the single photograph was unduly suggestive, the application of the reliability factors clearly demonstrates that Officer Jackson's in-court identification was sufficiently reliable. *See id.* First, Officer Jackson had ample opportunity to view Defendant. As explained above, Officer Jackson had her vehicle's headlights on and directed at Defendant. The two made eye contact. Defendant had paused at the trunk of the vehicle he was driving for five seconds, allowing Officer Jackson to focus on what he looked like. Second, Officer Jackson testified that while Defendant was standing near the trunk, her sole attention was on Defendant, enabling her to clearly observe his features.

Third, Officer Jackson was able to articulate details about Defendant. When she saw the DMV photograph of him, she explained what he looked like and noted that his hair was done differently. She explained his looks in detail, including what kind of clothes he wore. Fourth, Officer Jackson expressed no hesitance about her identification of Defendant at the initial identification of Defendant, nor did she express hesitance during the suppression hearing. And fifth, Officer Jackson identified Defendant from the photograph minutes after seeing him stand by the Nissan, in front of her patrol car.

Thus, under the totality of the circumstances, Officer Jackson's in-court identification was sufficiently reliable, and Defendant's Motion to Suppress such identification will be denied.

In sum, the Court finds that Officer Jackson's actions, as challenged, were reasonable under the Fourth and Fifth Amendments, and that no constitutional violations took place warranting the suppression of either the cell phones or identification.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Feb 9, 2023
Richmond, Virginia

14