IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 3:22-cr-148–HEH |
| ) | |
| MELVIN LEON MYRICK, ) | |
| a.k.a. "MEL SKEE," ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**
(Granting Motions in Limine)

This matter is before the Court on the Government's Motion in Limine ("Gov't's Mot.," ECF No. 55), filed on March 10, 2023, and Defendant's Motion in Limine ("Def.'s Mot.," ECF No. 57), filed on March 12, 2023. The Government moves this Court to admit intrinsic evidence of drug trafficking—namely, text messages located on Defendant's cellphone regarding drug trafficking. Defendant seeks to question an expert witness regarding prior inconsistent written statements made by that expert. The parties filed memoranda supporting their respective positions, and the Court heard oral argument on March 17, 2023. For the following reasons, the Court will grant both Motions.

## I. BACKGROUND

Based on the testimony and evidence submitted at the hearing, the relevant facts are as follows. At roughly 2:00 a.m. on April 20, 2022, Officer Karissa Jackson ("Officer Jackson") of the Petersburg Police Department observed a Silver Nissan turn right onto Boulevard Avenue while the traffic light was red, despite two clearly posted "NO TURN ON RED" traffic signs. (ECF No. 33 at 2; Suppression Hr'g, Ex. 1.) Having observed

this traffic violation, Officer Jackson sought to pull over the vehicle, so she activated her patrol vehicle's emergency lights and siren. (*Id.*) In response, the driver accelerated, speeding over 85 miles per hour and switching lanes erratically.[1] (*Id.*) Officer Jackson called for backup and began to lose sight of the Nissan, so she turned off the emergency lights and siren. (*Id.* at 3.) She then encountered the Nissan wrecked into a tree on the right side of the road, with airbags deployed. (*Id.*) She illuminated the emergency lights on her vehicle and parked behind the Nissan. (*See id.*; Suppression Hr'g, Ex. 4.)

The driver of the Nissan, who was a male, stepped out of the vehicle and began to flee from the scene by running toward a wooded area. (ECF No. 33 at 3.) The man then changed course and began running along the driver's side of the Nissan, toward the Nissan's trunk. (*Id.*) At the suppression hearing, Officer Jackson testified that the man suddenly paused for roughly five seconds while standing near the trunk of the Nissan. While he was standing by the trunk and facing her, she was seated in her vehicle and looking directly at him through her windshield. (*See id.*) Officer Jackson and the driver made eye contact. (*Id.*) From there, the man ran from the trunk of the Nissan to the front passenger door, which he attempted to open. (*Id.*) Officer Jackson suspected the driver attempted to open the passenger side door because he had realized he left something inside the vehicle and wished to retrieve it. (*Id.*) He was ultimately unable to open the

---

[1] This was an estimate based on Officer Jackson comparing the speed of her vehicle, which was recorded as traveling at 85 miles per hour, with that of the Nissan, which was traveling at a faster rate than Officer Jackson's vehicle. (*See* ECF No. 33 at 2.)

2

passenger side door. (*Id.*) Then, the man fled on foot into the wooded area and was not found that night.[2] (*Id.*)

Officer Jackson was concerned for her safety and unsure whether there was anyone else inside the vehicle or if the driver of the Nissan was nearby and armed. (*Id.*) When backup arrived moments later, Officer Jackson got out of her vehicle and confirmed that no one else was inside of the Nissan. (*Id.*) She searched the vehicle and found a bookbag on the floor of the front passenger seat which contained suspected methamphetamine, suspected cocaine, suspected marijuana, and a black digital scale.[3] (*Id.*) On the center console was a loaded semi-automatic Glock pistol, and on the driver side floor she observed another loaded semi-automatic Glock pistol and a white iPhone. (*Id.*) She also identified a black iPhone recovered from the driver side door. (*Id.*)

Officer Jackson discovered some documents located inside the car. One document was a DMV license application which bore the name, "Melvin Myrick." (Suppression Hr'g, Ex. 5.) Another document was a Virginia Electronic Benefits Transfer card issued to an individual named Ms. Dimorea Daniels.[4] (Def.'s Mem. in Supp. of Mot. to Suppress, ECF No. 28 at 3.) The last document was a car repair estimate generated for an individual named Mr. John Myrick. (*Id.*)

---

[2] The man, later identified as the Defendant in this case, was subsequently arrested in August of 2022, in connection with another drug trafficking investigation in Prince George County.

[3] All drugs were later submitted to the Virginia Department of Forensic Science and determined to be the drugs they were suspected to be.

[4] It was later discovered that the car was leased to Ms. Daniels. (Suppression Hr'g, Ex. 13.)

3

Officer Jackson approached an investigating officer who was also at the scene of the car crash. (ECF No. 34 at 5.) She showed the other officer the DMV document and asked him to retrieve a DMV photograph of Defendant on his patrol car computer screen. (*Id.*) After seeing the photograph, Officer Jackson confirmed that the man depicted in the photograph was the same man who had been driving the Nissan. (*Id.*)

On April 25, 2022, Officer Jackson sought and obtained a search warrant for the black and white iPhones that were located inside the Nissan. (ECF No. 33 at 4.) At the time Officer Jackson submitted the application for the search warrant for the cellphones, she did not know to whom the cellphones belonged. The search warrant and affidavit were filed with the Colonial Heights Circuit Court on April 26, 2022. (*Id.*) On June 2, 2022, a Petersburg detective obtained a search warrant for historical location information associated with the accounts pertaining to the cellphones. (*Id.*) The search warrant was returned executed and filed with Petersburg Circuit Court on June 7, 2022. (*Id.*)

Defendant claims he was not the driver of the Nissan, and previously moved this Court to suppress evidence obtained from the search of his cellphones and Officer Jackson's purported identification of him. (ECF Nos. 25, 27.) In a Memorandum Opinion and accompanying Order, the Court denied those Motions. (ECF Nos. 45, 46.)

Both Motions in Limine address evidence related to Defendant's cellphones. The search of Defendant's cellphones revealed text messages sent from or received by Defendant regarding drug trafficking. (Gov't's Mot. in Lim. at 5.) As one example, the Government explains that on March 15, 2022, Defendant sent text messages to several

4

individuals stating, "Girl and ice on deck good numbers . . . ."[5] (*Id.*) Similar messages were exchanged between Defendant's phone and others leading up to the April 20, 2022 incident. (*Id.*) The Government seeks to introduce these text messages as intrinsic evidence or, in the alternative, as admissible evidence pursuant to Federal Rule of Evidence 404(b)(2). (*Id.* at 1.)

Defendant's Motion in Limine seeks to allow him to question an expert witness about inconsistent written statements regarding movements of Defendant's cellphone. (Def.'s Mot. in Lim. at 1.) Specialist Joshua Pickens is one of the Government's expert witnesses, and he produced documentation—a map—which shows the location of Defendant's cellphone after the cellphone was seized. (*Id.*) Specialist Pickens' original document was dated "May 20, 2022." (Ex. 1 to Def.'s Mot., ECF No. 57-1.) However, Specialist Pickens's later amended the document to include the date "June 20, 2022," instead of "May 20, 2022." (*See id.*; Ex. 2 to Def.'s Mot., ECF No. 57-2.)

## II. ANALYSIS

### A. Defendant's Motion in Limine

Because the change in the expert witness's written statement is a prior inconsistent statement, Defendant argues that he should be able to question the expert about the inconsistency. *See Goldberg v. United States*, 425 U.S. 94, 96 (1976) (holding that a prior inconsistent statement contained in a written report is admissible for impeachment

---

[5] The Government maintains that "[g]irl" and "ice" are terms utilized "by drug traffickers to disguise reference to cocaine and crystal methamphetamine." (*Id.*) The Government indicated that it will have an expert testify about the meaning of these terms at the trial.

5

purposes if that statement was signed or otherwise adopted and approved by the witness who made it). At the Motions in Limine Hearing, the Government stated that it does not contest Defendant's Motion in Limine and explained that the change in date was simply a typographical error, which the expert will explain in his testimony at trial. Relying upon the United States Supreme Court's precedent, *see Goldberg*, 425 U.S. at 96, and noting the Government does not challenge Defendant's Motion, the Court concludes that Defendant shall be able to question the expert about the inconsistent written statements. Accordingly, Defendant's Motion in Limine (ECF No. 57) will be granted.

**B. The Government's Motion in Limine**

The Government seeks to admit the text "messages that occurred within approximately one month of the [April 20, 2022] traffic stop and . . . discuss selling and supplying—using street lingo—the types of narcotics recovered in this case." (Gov't's Mot. in Lim. at 5.) The Government asserts two theories under which this evidence should be admitted. First, the Government argues that the text messages are intrinsic to the charged offense: possession with the intent to distribute methamphetamine and cocaine hydrochloride. (*Id.* at 3.) The Government maintains that the text-message evidence is part of a single criminal episode or necessary preliminaries to the crime charged. (*Id.*) Second, the Government contends that even if the Court does not admit the evidence under the intrinsic-evidence theory, it should nevertheless admit the evidence under Federal Rule of Evidence 404(b) because the text messages prove, among other things, Defendant's identity and intent to distribute the narcotics that he possessed

6

in the vehicle. (*Id.* at 2; Gov't's Reply at 1, ECF No. 60.) The Court will address each argument in turn.

"Rule 404(b) of the Federal Rules of Evidence prohibits the admission of evidence of other wrongs or acts solely to prove a defendant's bad character." *United States v. Queen*, 132 F.3d 991, 994–95 (4th Cir. 1997). Rule 404(b) states:

> (1) Prohibited Uses. Evidence of any *other crime*, wrong, or act is *not admissible to prove a person's character* in order to show that on a particular occasion the person acted in accordance with the character.
> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident.

(emphasis added). This Rule is "an inclusive rule, admitting all evidence of other crimes or acts except which lends to prove only criminal disposition." *United States v. Young*, 428 F.3d 260, 271–72 (4th Cir. 2001).

"Rule 404(b) limits only the admission of evidence of acts extrinsic to the one charged, but does not limit the admission of evidence of intrinsic acts." *United States v. Chin*, 83 F.3d 83, 87 (4th Cir. 1996). The United States Court of Appeals for the Fourth Circuit has "consistently held that 'acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence.'" *United States v. Bush*, 944 F.3d 189, 195–96 (4th Cir. 2019) (quoting *Chin*, 83 F.3d at 87–88); *see also United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) ("Evidence of uncharged conduct is not 'other crimes' evidence subject to Rule 404 if the uncharged conduct 'arose out of the same series of transactions as the charged offenses, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial.").

"Other criminal acts are intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *Chin*, 83 F.3d at 88. Evidence is also intrinsic when it "serve[s] to complete the story of the crime on trial." *Bush*, 944 F.3d at 196. "Evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010).

Under the intrinsic evidence theory, the Government maintains that the text messages are admissible because they "are a part of the story of the case and necessary to tell that story." (Gov't's Mot. at 3.) The Government points to *United States v. Harvey*, 159 F. App'x 451, 456 (4th Cir. 2005) (unpublished), where the Fourth Circuit held that evidence of drug trafficking by the defendant, which occurred prior to the charged drug trafficking conduct, was properly admitted because it was intrinsic to the charged offense of conspiracy to distribute and possess with intent to distribute cocaine base. *Id.* The Fourth Circuit stated, "the mere fact that the evidence involved activities occurring before the charged time frame of the conspiracy does not automatically transform that evidence into 'other crimes' evidence." *Id.* The evidence of previous drug trafficking was not "other crimes evidence as it arose out of the same . . . series of transactions as the charged offense." *Id.* at 456–57.

The Fourth Circuit reasoned that "[b]ecause these transactions were substantially identical to the conspiracy alleged in the indictment—they occurred in the same

8

residential areas . . . , involved the same controlled substance, and were close in time to the period charged—we believe that they were part of the same series of transactions. Thus, they were not evidence of other crimes." *Id.* (internal marks omitted); *see also United States v. Gibbs*, 547 F. App'x 174, 181 (4th Cir. 2013) (unpublished) (affirming district court admission of drug trafficking occurring prior to charge conduct where evidence put drug distribution scheme into context, completed the story, and explained the background of the case); *United States v. Mann*, No. 1:11-cr-341, 2011 WL 4804869, at *1 (E.D. Va. Oct. 11, 2011) (holding that drug crimes occurring prior to charged drug trafficking were intrinsic to the charged offense, not "other crimes" evidence where they were substantially similar to the charged offenses).

In the Fourth Circuit cases that affirm a district court's admission of intrinsic evidence—including the cases mentioned above—the underlying offense was conspiracy. In the matter at hand, however, Defendant was not charged with conspiracy. Rather, he was charged with possession with the intent to distribute methamphetamine and cocaine hydrochloride. Despite this distinction, the Government argues that "the rationale for admitting conduct predating the timeline of the conspiracy as intrinsic to the charged conduct is no less probative here." (Gov't's Mot. at 5.) Specifically, the Government argues that as with conspiracy cases, where the Fourth Circuit held that conduct was intrinsic because the conduct "involved the same controlled substance" and was "close in time to the period charged," so too, here, the activity—text messages—involved the same controlled substance (methamphetamine and cocaine hydrochloride) and "close in time to the period charged." *See Harvey*, 159 F. App'x at 456–57; *Kennedy*, 32 F.3d at 885–86.

The Government only seeks to admit text messages pertaining to the trafficking of drugs, and within approximately one month prior to the traffic stop. (Gov't's Mot. at 5.) The Government maintains that the evidence from the cellphone was "part of the same series of transactions by Defendant and involved the same narcotics at issue." (*Id.*)

Defendant argues that the text-message evidence should not be admitted because the evidence is not intrinsic to the case, nor is it necessary to complete the story of the charged offense. (Def.'s Opp'n at 4–5, ECF No. 56.) Moreover, Defendant maintains that unlike in the Fourth Circuit cases which affirm district courts' decisions to admit intrinsic evidence, the underlying charges in this case do not involve conspiracy. (*Id.* at 3–4.)

This Court is persuaded by the Government's argument that text messages sent from or received by Defendant approximately one month before the traffic stop, which pertain to drug trafficking, are intrinsic to the crime charged in this case. In other words, the Court concludes that the text-message evidence is intrinsic to the crimes charged in the case at hand. In the modern age of advanced technologies, it is difficult to contemplate a scenario where drug traffickers do not, at least at some point, rely upon cellphones to traffic their drugs. Here, Defendant's cellphones were located inside an abandoned vehicle which also contained cocaine, methamphetamine, scales, and firearms. Defendant is charged with possession with the intent to distribute methamphetamine and cocaine hydrochloride. Texts messages on Defendant's phone which tend to show that Defendant had the intent to sell those controlled substances "are inextricably intertwined" and "were necessary preliminaries to the crime charged." *Chin*,

10

83 F.3d at 88. The text messages "serve to complete the story of the crime on trial," *Bush*, 944 F.3d at 196, and "form[] an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted," *Lighty*, 616 F.3d at 352. The texts messages which convey conduct of previous drug trafficking were not "other crimes evidence as [the text messages] arose out of the same ... series of transactions as the charged offense." *Harvey*, 159 F. App'x at 456–57. For these reasons, the Court concludes that the text messages are intrinsic to the crimes charged and are admissible. However, even if the text messages were not intrinsic to the crimes charged, this Court believes that the texts messages are nonetheless admissible under Federal Rule of Evidence 404(b).

As stated above, Rule 404(b)(1) precludes the admission of evidence of a crime, wrong, or other act, if it is used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character ...." Fed. R. Evid. 404(b)(1). However, Rule 402(b)(2) qualifies this provision, allowing the admissibility of evidence for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *United States v. Hodge*, 354 F.3d 305, 311 (4th Cir. 2004). "Evidence of prior bad actions is admissible under Rule 404(b) if the evidence is (1) relevant to an issue other than the general character of the defendant; (2) necessary to prove an element of the charged offense; and (3) reliable." *Hodge*, 354 F.3d at 312. Courts have recognized that "prior drug-distribution evidence is admissible [under Rule 404(b)] to show intent to distribute."

*United States v. Dunnican*, 961 F.3d 859, 874 (6th Cir. 2020) (quoting *United States v. Ayoub*, 498 F.3d 532, 548 (6th Cir. 2007)); *see also Hodge*, 354 F.3d at 312.

In *Hodge*, the Fourth Circuit affirmed the district court's decision to admit evidence of a defendant's prior acts of selling narcotics that took place over four years before the date the defendant was charged. 354 F.3d at 311–14. In that case, the defendant was also charged with possession with intent to distribute. *Id.* The Fourth Circuit explained that the evidence of the defendant's prior drug transactions was "relevant and necessary in that they tended to show the existence of a continuing narcotics business and therefore to show [the defendant's] knowledge of the drug trade and his intent to distribute the cocaine found in his [vehicle]." *Id.* at 312 (citing *United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997) (holding that a not-guilty plea places defendant's intent at issue, and evidence of similar prior crimes can thus be relevant to prove intent to commit the charged crime). The court also concluded that the probative value of the evidence was not substantially outweighed by the danger that it would cause unfair prejudice. *Id.*

Similarly, in *Dunnican*, the United States Court of Appeals for the Sixth Circuit affirmed the district court's admission of text messages regarding the defendant's other, previous drug transactions. 961 F.3d at 874. There, too, the defendant was charged with possession with intent to distribute. *Id.* In reaching its decision, the Sixth Circuit stated that the text-message evidence "was relevant to show a *necessary* element of the charge: [the defendant's] *intent* to distribute the illegal drug." *Id.* (emphasis in original). The court explained that text messages which occurred over five months before the offense

12

charged in the indictment took place were appropriately admitted because they were "relevant to a matter at issue" and "substantially similar to, and near in time to, the offense charged in the indictment." *Id.* (citing *United States v. Ismail*, 756 F.3d 1253, 1259 (6th Cir. 1985)). The Sixth Circuit affirmed the district court's determination that the probative value of the text-message evidence substantially outweighed its potential prejudicial effect under Federal Rule of Evidence 403. *Id.* at 875. This was because the defendant had disputed both the possession and specific intent elements of the crime charged, so the text-message evidence was relevant to show that the defendant had possessed the drugs and that he had distributed it in the past. *Id.* These facts, the court noted, "indicated a pattern of [the defendant's] *intent* to distribute. This pattern, in turn, would inform the jury's determination of his intent to distribute the drugs." *Id.* (emphasis in original).

In this case, Defendant argues that the admission of the text-message evidence would be unduly prejudicial, unnecessary, and irrelevant, inadmissible character evidence under Federal Rules of Evidence 403 and 404.[6] (Def.'s Opp'n at 3–4.) Defendant further contends that the Government is not prohibited from calling expert witnesses to create inferences that Defendant is a drug dealer and implies that this is the appropriate method for the Government to draw such inferences, and not by admitting evidence of text messages.

---

[6] Defendant also asserts that a Motion in Limine nine days before trial is not reasonable notice of the intended use of such evidence. (Def.'s Opp'n at 3.) The Court rejects this argument. The Government filed its Motion in Limine twelve days before trial, on March 10, 2023. (ECF No. 55.) This is adequate notice.

The Court agrees with the Government's position. As in *Hodge*, the text-message evidence in this case is "relevant and necessary in that they tend[] to show the existence of a continuing narcotics business and therefore to show [the defendant's] knowledge of the drug trade and his intent to distribute the cocaine [and methamphetamine] found in [the rental car]." *Hodge*, 354 F.3d at 312. Likewise, as in *Dunnican*, the text messages are "relevant to show a *necessary* element of the charge: [Myrick's] *intent* to distribute the illegal drug." 961 F.3d at 874 (emphasis in original). Additionally, as in *Dunnican*, the court permitted text-message evidence that took place over five months before the offense charged in the indictment occurred. *Id.* Here, the Government only seeks to admit text-message evidence that occurred one month before the offense charged in the indictment occurred. These text messages are admissible because they are "relevant to a matter at issue" and are "substantially similar to, and near in time to, the offense charged in the indictment." *Id.* Moreover, like in *Dunnican*, the probative value of the text-message evidence substantially outweighs its potential prejudicial effect under Federal Rule of Evidence 403 because the evidence is relevant to show that the defendant had possessed the drugs and that he had distributed the drugs in the past. *Id.* at 875. These facts "indicate[] a pattern of [the defendant's] *intent* to distribute. This pattern, in turn, w[ill] inform the jury's determination of his intent to distribute the drugs." *Id.* (emphasis in original).

For these reasons, the Court will grant the Government's Motion in Limine (ECF No. 55). Specifically, text messages sent from or received by Defendant that occurred from March 15, 2022, to April 20, 2022, which discuss selling and supplying—using

14

street lingo—the types of narcotics recovered in the rental car will be admissible. The Court concludes that this evidence is intrinsic, *see Chin*, 83 F.3d at 88, and it is also admissible under Federal Rule of Evidence 402(b)(2) because it is necessary, reliable, and relevant, *see Hodge*, 354 F.3d at 312; *Dunnican*, 961 F.3d at 873–75. Moreover, at trial, the Court will issue limiting jury instructions explaining the purpose for admitting prior bad acts evidence. *See Hodge*, 354 F.3d at 312 ("Limiting jury instructions explaining the purpose for admitting prior bad acts evidence and advance notice of the intent to introduce such evidence provide additional protection to defendants."); *see also Lighty*, 616 F.3d at 353; *Dunnican*, 961 F.3d at 875.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: March 21 2023
Richmond, Virginia